**Dated: July 28, 2022**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re: )
 )
Bobby Lee Smith, ) Case No. 22–10494-JDL
 ) Ch. 7
      Debtor. )

### ORDER ON CLAIM OF EXEMPTION

*"'When I use a word,' Humpty Dumpty said, in a rather scornful tone, 'it means just what I choose it to mean—neither more nor less.' '[T]he question is,' said Alice, 'whether you can make words mean so many different things.'* Lewis Carroll's *"Through the Looking Glass"*

    Here, the word in question is "motor vehicle," but, unlike Humpty Dumpty, neither a litigant nor a court may manufacture words to mean what it chooses them to mean. In a case of first impression, not only in this Court but apparently in any jurisdiction in the United States, the Debtor claims that his golf cart, his only method of transportation, is exempt from being property of the bankruptcy estate by virtue of being a "motor vehicle" under the Oklahoma exemption statute. The bankruptcy Trustee takes issue with the Debtor's claim, arguing that definitions within the Oklahoma Motor Vehicle statutes

determine the issue. For consideration by the Court are the following:

1. *Objection to Debtor's Claimed Exemptions* [Doc. 16]; and

2. *Debtor's Response to Trustee's Objection to Claimed Exemptions* [Doc. 20].

Pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure, the Court makes the following Findings of Fact and Conclusions of Law:

## Facts

On July 20, 2022, the Court held an evidentiary hearing on the issues framed by the two above pleadings. The Debtor's bankruptcy Schedule C, Property Claimed as Exempt, listed a 2005 Yamaha golf cart with a current value of $2,000 as exempt as a "motor vehicle" under 31 OS § 1(A)(13). The Debtor testified that he believed that the golf cart had a value of approximately $2,400; that it was powered by a gas engine; that he filed for bankruptcy because he was unemployed, his roofing business had failed and that he had gone through a divorce. He testified that the golf cart was his only means of transportation for shopping or to take himself and his two children to dine out. He testified that the golf cart was his only reliable means of transportation which he owned. From time to time, for more lengthy travel needs required for chores or part-time work, he borrowed his father's pickup when it was available. He testified that there was an automobile at his property; however, it was owned by his daughter (and titled and registered in her name) and had a broken transmission. He testified that the golf cart was not licensed nor registered with the Oklahoma Tax Commission Department of Motor Vehicles. He further testified that he did not drive the golf cart on the public streets (other than to perhaps cross them) but drove

it on the sidewalks.[1]  He does not golf.

## Discussion

When determining the validity of a claimed state law exemption, bankruptcy courts look to the applicable state law. *Lampe v. Williamson (In re Lampe)*, 331 F.3d 750, 754 (10th Cir. 2003) (quotation marks omitted); *In re Hodes*, 402 F.3d 1005, 1009 (10th Cir. 2005).  Because Oklahoma has opted out of the federal bankruptcy exemption scheme, the Debtor may only claim exemptions available under Oklahoma law. *In re Kretzinger*, 103 F.3d 943, 945 (10th Cir. 1996); *In re Gibson*, 433 B.R. 868, 870 (Bankr. N.D. Okla. 2010); *In re Crisp*, 215 B.R. 476 (Bankr. W.D. Okla.1997); see 11 U.S.C. § 522(b)(1); 31 O.S. § 1.B.  In the present case, the exemption claimed is the following under 31 OS § 1 (A)(13):

> A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:
>
> * * * *
>
> 13. Such person's interest, not to exceed Seven Thousand Five Hundred Dollars ($7,500.00) in value, in one motor vehicle;

The Debtor claims his golf cart as exempt by virtue of being classified as a "motor vehicle" under the foregoing statute.

An exemption is presumed to be valid, and the objecting party, here the Trustee, bears the initial burden of producing evidence to rebut the presumption and establish by

---

[1] The Debtor testified that he had driven the golf cart on the public streets only once, to go to a hardware store approximately a mile away from his home following a snowstorm.  He received a traffic citation from the Oklahoma City Police for driving an unlicensed, unregistered vehicle on public streets which was later dismissed due to the inclement weather making it impossible to drive on the sidewalk.

a preponderance of the evidence that the exemption was not properly claimed. *In re Grant,* 2016 WL 455416 *3 (10th Cir. BAP 2016); *In re Hall*, 441 B.R. 680, 685 (10th Cir. BAP 2009); See Fed.R.Bankr.P. 4003; See also *In re Simpson,* 206 B.R. 230, 232 (Bankr. E.D. Okla. 1997).

As always, the starting point in any case of statutory construction is to look at the language of the statute itself. *In re Overland Park Financial Corp.*, 236 F.3d 1246, 1251 (10th Cir. 2001) (citing *Chickasaw Nation v. United States*, 208 F.3d 871, 876 (10th Cir. 2000). However, where adherence is urged to the "strict letter" of the statute and a literal interpretation would lead to an inconsistency or incongruity between different parts of the statute and would produce consequences clearly beyond legislative contemplation, judicial interpretation becomes necessary to avoid such incongruity and to ascertain the true meaning of the particular words in accord with the legislative intent. *McNeill v. City of Tulsa*, 953 P.2d 329 (Okla. 1998); *State ex rel. Rucker v. Tapp,* 380 P.2d 260 (Okla. 1963).

To determine the common, ordinary meaning of the undefined terms using contracts, statutes, and other legal documents, "we typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities." *Texas State Board of Examiners of Marriage & Family Therapists v. Texas Medical Association*, 511 S.W.3d 28, 35 (Tex. 2017). Dictionaries generally define the term "golf cart" to refer to a motorized cart *designed* to transport golfers around a golf course.[2] That definition is of little help in the present case. The fact that the cart was

---

[2] See Golf cart, Dictionary.com, https://www.dictionary.com/browse/golf-cart (defining "golf cart" to mean "a small, battery-powered, three-or four-wheel vehicle used for transporting one or two golfers and their equipment around a golf course"); Golf cart, Merriam-Webster's Collegiate Dictionary 11th ed. (2014) (defining "golf cart" to mean "a motorized cart for carrying golfers and

4

"designed" for use on a golf course is of little benefit because while it might have been designed for a specific purpose it is obviously, as here, capable of transporting people and property for many other purposes other than on a golf course. On the other hand, if one parses the term "motor vehicle" by dictionary definitions the "golf cart" may fit into that definition. For example, the Merriam-Webster's Collegiate Dictionary 11th ed. defines "motor vehicle" as "an automotive vehicle not operated on rails," an "automobile" as "a four-wheeled automotive vehicle designed for passenger transportation," and "vehicle" as "a means of carrying or transporting something: (a) motor vehicle (b) a piece of mechanized equipment." Those definitions, along with the use of the golf cart in the present case, appear to bring the Debtor's golf cart within the definition of a "motor vehicle." But again, the definition of words in isolation, however helpful, is not necessarily controlling in statutory construction. *Dolan v. U.S. Postal Service,* 546 U.S. 481, 486, 126 S.Ct.1252 (2006). The "interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Id.*

The Court begins with the premise, true under state and federal law, that to affect their humanitarian purposes exemption laws must be liberally construed in favor of the claimant of an exemption. *Lampe v. Williamson (In re Lampe)*, 331 F.3d 750, 754 (10th Cir. 2003; *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 522 (10th Cir. BAP 2002).

---

their equipment over a golf course — called also *golf car*"); Golf cart, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/golfcart (defining "golf cart" to mean "a motorized cart for carrying golfers and their equipment over a golf course"); Golf cart, CollinsDictionary.com, https://www.collinsdictionary.com/dictionary/english/golf-cart (defining "golf cart" to mean "a small, electric, carlike vehicle designed to carry two golfers and their golf clubs around a golf course").

The Court is mindful of the purpose of all exemption statutes as set forth by the Oklahoma Supreme Court:

> The purposes of the exemption statute are to prevent improvident debtors from becoming subjects of charity by preserving to them sufficient definitely classified property that they maintain a home for themselves, and to prevent inconsiderate creditors from depriving them of the necessities of life. It is the duty of the court to so apply these exemption statutes to accomplish these purposes.

*In re Sims*, 241 B.R. 467, 471(Bankr. N.D. Okla. 1999) (quoting *Security Building & Loan Ass'n v. Ward*, 1935 OK 996, 50 P.2d 651, 657 (1935)). The Court believes that its decision today is consistent with the oft-cited maxim that the Oklahoma exemption laws are to be liberally construed in favor of the exemption. See, e.g., *In re Siegmann,* 1988 OK 59, 757 P.2d 820 (1988); *Nelson v. Fightmaster*, 1896 OK 26, 44 P. 213, 214 (1896); *Phelan v. Lacey*, 51 Okla. 393, 394, 151 P. 1070, 1071 (1915); *In re Fisher*, 11 B.R. 666, 668 (Bankr. W.D. Okla.1981); See, 25 O.S. § 29 ("The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice."). The purposes of the exemption statutes strengthen the conclusion that a golf cart used as testified to by the Debtor is a "motor vehicle" within the purview of 31 O.S. § 1(A)(13).

The Trustee relies upon various definitions of "motor vehicle" or "vehicle" under provisions of the Motor Vehicle Code, Title 47 Okla. Stat., the Oklahoma Vehicle License and Registration Act, 47 O.S. § 1101 *et seq*., and the Motor Vehicle Dealers, Salespersons, Distributors, and Manufacturers Etc. Act, 47 O.S. § 561 *et seq*. The Court has to define "motor vehicle" within the statutory context and purposes under Title 47 just

6

as it has to define it within the statutory context and purpose of the Title 31 exemption statutes.  The term "motor vehicle" within much of Title 47 must be viewed as part of the regulatory scheme for motor vehicles which is essential to ensure traffic safety on the public roadways and the proper registration of potentially lethal vehicles.[3]  Likewise, the Oklahoma Financial Responsibility Act, 47 O.S. § 7-201, concerned with ensuring the public's protection against injuries from automobile accidents, mandates liability insurance for any "driver and owner of any vehicle type subject to registration under the motor vehicle laws of this state which is in any manner involved in an accident upon the highways and elsewhere throughout the state...."  On the other hand, when it comes to protection of the general public against fraud, theft or conspiracy to defraud, as opposed to highway safety, Title 47 defines "motor vehicle" to include "any and all other land-based devices which are self-propelled but which are not designed for use upon a highway...."  Motor Vehicle Chop Shop, Stolen and Altered Property Act, 47 O.S. § 1502(2).  On its face, that definition would include off-highway golf carts.  Whether a golf cart is a "motor vehicle" is to be

---

[3] However, courts have held that the common usage of the word "motor vehicle" encompassed a golf cart operating on a private road and therefore, the defendant's conviction for operating a motor vehicle under the influence of alcohol was affirmed. *Mattingly v. Commonwealth of Kentucky*, 2009 WL 1098111 (Ky. App. 2009). There the court rejected the defendant's argument that the court should adopt the definition of "motor vehicle" under a non-criminal statute under the motor vehicle code which defined a motor vehicle as "a motorized transportation agent used for the purpose of transporting people and property over and upon the public highways of the Commonwealth." The defendant asserted that this definition exempted golf carts under the criminal statutes because they are not legally driven on the public highways. Rejecting that argument as too restrictive, the court found that "the common usage" of the word motor vehicle encompassed golf carts operated on private subdivision roads because by driving the golf cart under the influence of alcohol the defendant had placed all surrounding persons in risk of harm.  Again, the context and purpose of the statute is necessary to help define the word. See also, *Coker v. The State,* 583 S.E.2d 498 (Ga. App. 2003) (affirming defendant's conviction for driving with a suspended license by driving a golf cart on a public highway, although a license was not generally required to drive a golf cart).

gauged by the statutory framework and context regarding exemptions within which that term is found. In short, the rationale for a golf cart to not be included as a "motor vehicle" for purposes of rules-of-the road, traffic safety or coverage under a automobile insurance is not the same for purposes as a debtor's exemption from execution by a judgment creditor.

As stated above, there is no Oklahoma precedent on the identical issue presented to this Court, as to whether a golf cart can qualify as an exempt "motor vehicle" within the definition of 31 O.S. § 1(A)(13). Under such circumstances, the Court could employ the Oklahoma Uniform Certification of Questions of Law Act, 20 O.S. § 1601 *et seq.*, seeking a determination of the question by the Oklahoma Supreme Court. The decision to certify a question of state law to the state's highest court rests within the discretion of the federal court. *Oliveros v. Mitchell,* 449 F.3d 1091, 1093 (10th Cir. 2006) (citing *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988)); *In re Bentley*, 622 B.R. 296, 306-07 (Bankr. W.D. Okla. 2020). "Although certification may be appropriate in certain cases, it 'is never compelled[.]'" *Odom v. Penske Truck Leasing Co., LP*, 2016 WL 11593856 (W.D. Okla. 2016) (citing *Boyd Rosene and Associates, Inc. v. Kansas Municipal Gas Agency*, 178 F.3d 1363, 1365 (10th Cir. 1999)).

Certification should not be routinely invoked whenever a federal court is faced with a state statute that has not been interpreted by the state's highest court. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235 (10th Cir. 2012). "[F]ederal courts bear a duty to decide questions of state law when necessary to render" a decision. *Id.* (citing *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008)). As stated by the Tenth Circuit in *Colony Insurance,* 698 F.3d at 1235-36 (citing *Pino v. United States*, 507 F.3d 1233, 1236

8

(10th Cir. 2007)):

> "[W]e apply judgment and restraint before certifying," and "will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves."

Thus, the Court's task is to predict how the Oklahoma Supreme Court would interpret the statute under the circumstances of this case. *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."). For the reasons set forth above, the Court believes the Oklahoma Supreme Court would agree, under the facts of this particular case, with the Court's interpretation that the Debtor's golf cart is exempt as a "motor vehicle" within the meaning of 31 O.S. § 1(A)(13).[4] Accordingly, for the reasons stated above,

**IT IS ORDERED** that the Trustee's *Objection to Debtor's Claimed Exemptions* [Doc. 16] is **Denied**, and the Debtor's 2005 Yamaha golf cart is determined to be exempt under 31 O.S. § 1(A)(13).

# # #

---

[4] In reaching its decision to not certify the question, the Court has taken into consideration the equities of requiring the parties, particularly the Debtor, of incurring the time and expense of proceeding through the Oklahoma Supreme Court. The stated value of the golf cart is approximately $2,000. What the Trustee would net from the sale of the same after expenses is uncertain. It is really the Debtors only purportedly exempt item of property of any significant value. The Debtor has debts of almost $1 million. Even if the Court would find the golf cart not exempt, there would likely be no money for the benefit of the creditors. Almost all proceeds of the sale would likely be used to cover the costs and fees of the Trustee.